# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, RAP 40(D), THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE ACTION.

RENDERED:  JUNE 15, 2023
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2022-SC-0364-WC

CARLSON ENVIRONMENT CONSULTANTS                                    APPELLANT


V.                      ON APPEAL FROM COURT OF APPEALS
                                NO. 2022-CA-0389
                        WORKERS' COMPENSATION BOARD
                                NO. WC-18-01315



JEFFEREY LANE;                                                     APPELLEES
HONORABLE JOHN B. COLEMAN,
ADMINISTRATIVE LAW JUDGE; AND
WORKERS' COMPENSATION BOARD


**MEMORANDUM OPINION OF THE COURT**

**<u>AFFIRMING</u>**

Carlson Environment Consultants appeals the Court of Appeals' decision affirming the opinion of the Workers Compensation Board which in turn, affirmed the ruling of the Administrative Law Judge (ALJ) that Jefferey Lane was permanently, partially disabled as a result of an injury suffered on May 16, 2018. For the following reasons, we affirm.

## I.      Factual and Procedural Background

Lane started as an Environmental Tech for Carlson in 2016. At the time of his injury, Lane held the title of Land Technician which required him to perform various physical activities such as drilling, shoveling, and lifting heavy items. Included in these heavy items were fifty-pound bags of bentonite that

Lane was required to "sling." Sling simply means to hold the bag open and empty its contents, throwing empty bags away. On May 16, 2018, while working in Irvine, Lane was slinging a bag of bentonite and felt a popping sensation in his left shoulder area. Lane complained that this popping sensation was very painful; painful to the point that Lane promptly notified his supervisor, Mr. Freshcorn, of his potential injury. Mr. Freshcorn responded by asking Lane if he would wait a few days before seeking medical attention, to which Lane agreed. Lane then left Kentucky and went back to his home state of Georgia.

Once back in Georgia, Lane visited Optim Healthcare Orthopedics to have his shoulder looked at. Following the examination, Dr. Don Aaron Jr. recommended surgery on his shoulder. However, Lane did not have the finances for the surgery and Carlson refused to pay for it. Therefore, Lane's surgery was delayed from August 16, 2018, to November 15, 2018.

Following the surgery, Lane intended to resume work for Carlson, however, due to his restrictions from surgery, Lane now required accommodations that Carlson was unable to fully accommodate. Therefore, Lane did not return to Carlson to resume employment, rather, he started working on his father's 800-acre family farm. Lane alleged that he had daily symptoms and pain relating to his shoulder that were enhanced when he used his shoulder. Lane was unable to partake in any loading or unloading due to the limitation his shoulder injury posed. Furthermore, Lane seriously doubted

2

his ability to ever return to work for Carlson due to his shoulder injury, regardless of the position he held.

Lane filed for workers compensation on September 10, 2018. Attached to the Form 101 were Dr. Aaron's Patient Care Summary/office note. As the ALJ summarized, based on MRI images and the November 15, 2018, surgery, Dr. Aaron "was unable to determine if the condition was work-related because the bulk of the findings . . . appeared chronic in nature and more of a repetitive wear and tear injury as opposed to a specific traumatic incident." On April 24, 2020, Dr. Aaron sent a letter stating he could not conclude whether or not the shoulder injury was work-related. At his deposition on February 19, 2021, however, Dr. Aaron clarified that his statement was due to him feeling this was more of a cumulative injury in light of Lane's continuous work over many years.

Carlson filed a medical dispute regarding compensability of the injury and surgery on November 20, 2018. ALJ Pullin placed the claim in abeyance pending Lane reaching maximum medical improvement and allowing the parties to submit further evidence in the meantime. Accordingly, Lane submitted the independent medical examination of Dr. Morgan Budde. Dr. Budde examined Lane on July 22, 2019. He diagnosed Lane with "left inferior labral tear with paralabral cyst, left acromioclavicular joint arthritis, and left subacromial impingement syndrome." He concluded the arthritic condition was dormant and aroused by the physical work of Lane, including the May 16, 2018, event. He determined Lane reached MMI on February 13, 2019, and

3

assessed 8% whole person impairment under the AMA Guides. He further concluded that Lane did not have the physical capacity to return to his previous work and could only perform moderate overhead activity with weight less than 50 pounds, and infrequent lifting and pulling with weights no greater than 75 pounds.

Based on Dr. Budde's report, ALJ Pullin made an initial ruling that Lane had made out a prima facie case for both causation and impairment. The matter was then transferred to ALJ Coleman on October 15, 2019. Following the transfer, Carlson filed Dr. Aaron's response to a letter Carlson had sent him regarding the shoulder injury and treatment. In this response, Dr. Aaron checked a box that he could not "within the realm of reasonable medical probability" state whether Lane's surgery was in direct response to a work-related injury. Additionally, Dr. Aaron refused to be deposed unless a fee was paid that exceeded the limitation contained in the Kentucky Administrative Regulations.[1] Because of this fee demand, Lane moved for Dr. Aaron's reports and opinions be stricken from the record since he was effectively deprived of cross-examination by Dr. Aaron's failure to sit for a deposition. ALJ Coleman allowed Dr. Aaron's treatment records to be admitted but agreed opinion evidence was stricken unless a deposition of Dr. Aaron was taken by either party. Carlson eventually did depose Dr. Aaron on February 19, 2021.

---

[1] 803 KAR 25:160(3). The ALJ's reasoning was that since Dr. Aaron was an out-of-state doctor, the KAR did not apply to him, and being outside the jurisdiction of Kentucky, he could not compel Dr. Aaron to accept a lesser fee.

4

Dr. Jeffrey Fadel performed an IME on Lane on March 18, 2021. He determined that Lane had an impression of acromioclavicular arthritis on his left shoulder which was dormant and was aroused by the injury at work on May 16, 2018. He determined Lane reached MMI in February 2019 and assessed 10% whole person impairment under the AMA Guides. He placed restrictions on Lane that he was to lift no more than 15 pounds occasionally with his left shoulder and no pushing or pulling more than 80 pounds occasionally.

ALJ Coleman entered judgment in favor of Lane. ALJ Coleman was persuaded by both Dr. Fadel's medical testimony and Lane's self-reported testimony, finding that Lane's shoulder injury and surgery were the direct result of his work in Irvine on May 16, 2018. The ALJ concluded, "I am convinced Lane immediately advised his supervisor, Freshcorn, when his symptoms arose while repetitively lifting, carrying and throwing the heavy bags during the course and scope of his work activities in Kentucky on or about May 16, 2018." ALJ Coleman concluded Lane was afflicted with "acromioclavicular arthritis of the left shoulder which was aroused by the work-related events occurring on or about May 16, 2018[,]" based upon both Dr. Fadel's opinion and Lane's testimony. The ALJ further noted that both Dr. Fadel and Dr. Budde agreed that "Lane's condition was the result of arousal of pre-existing changes into disabling reality." Therefore, Lane was awarded permanent partial disability benefits, temporary total disability benefits, and allowed recovery for medical expenses.

Carlson then petitioned ALJ Coleman for reconsideration concerning procedural and evidentiary issues. However, ALJ Coleman denied Carlson's petition because he had already thoroughly discussed these issues in the prior proceeding. Following ALJ Coleman's ruling, Carlson appealed to the Workers Compensation Board (Board) on two issues. The first one being that due to the treatment of Dr. Aaron's testimony, the case should have been dismissed. Second, whether or not there was substantial evidence showing Lane gave timely notice pursuant to KRS 342.185.

As to the first issue, the Board began by noting that the ALJ's ruling that Dr. Aaron's medical report would be stricken if he did not sit for a deposition was orally made "from the bench" and had no written or video record that would facilitate review. Nonetheless, it noted that "the procedure for proof time and granting or denying extensions is clearly within the discretion of the ALJ." Adding on, the Board relied on ALJ Coleman's statement within his opinion that "both parties have been given the right to complete their evidence despite the complications from having out of state parties and the interruption of the Covid-19 pandemic." Finally, the Board noted the issue was mooted because Dr. Aaron's deposition was taken and admitted into evidence, therefore, any interlocutory ruling that his medical opinion would not be considered absent a deposition was no longer controlling.

As to the second issue, the Board denied Carlson's argument concerning the timeliness of Lane notifying his employer of injury. The Board noted that an ALJ has the sole discretion to determine the quality and substance of evidence.

6

Therefore, the Board could only overturn the ALJ's findings if they were so unreasonable that they must be reversed as a matter of law. The Board concluded that:

> "the parties offered conflicting evidence as to when Lane notified Carlson of the injury and what he told his supervisors. The ALJ set forth the evidence he reviewed and the basis for his determination. Because the decision is supported by substantial evidence, we affirm. It is not for this board to substitute its judgment for that of the administrative law judge as to the weight of the evidence on questions of fact."

Carlson then appealed to the Court of Appeals. Concerning the first argument, the Court of Appeals referred back to ALJ Pullin's determination that Lane filed Dr. Budde's medical report on September 3, 2019, creating a prima facie case for causation and impairment. This was before the matter was transferred to ALJ Coleman and before the oral striking of Dr. Aaron's reports. Therefore, since the ALJ has broad discretion to control the taking and presentation of proof, ALJ Coleman was permitted to deny Carlson's motion to dismiss.

Concerning the second argument, the Court of Appeals stressed that the ALJ has the sole discretion to determine the validity of evidence. Moreover, when the claimant bears the burden of proof, if the ALJ rules in favor of the claimant, then the Court of Appeals' job is to determine whether the ALJ's conclusion was supported by substantial evidence. The Court of Appeals concluded that "in the case before us, the evidence is conflicting . . . the ALJ was persuaded by Dr. Fadel's opinion and found Lane's testimony regarding the onset of symptoms to be credible. Although another ALJ may have decided

this case differently, ALJ Coleman's decision is supported by substantial evidence, and we may not disturb it on appeal." Carlson then appealed to this Court for review.

## II.     Standard of Review

On appeal, this Court's role "is to correct the Board only where the Court perceives the Board has overlooked or misconstrued controlling statutes or precedent, or committed an error in assessing the evidence so flagrant as to cause gross injustice." *Western Baptist Hosp v. Kelly*, 827 S.W.2d 685, 687-88 (Ky. 1992). Moreover,

> the ALJ has the sole discretion to determine quality, character, and substance of the evidence and may reject any testimony and believe or disbelieve various parts of the evidence regardless of whether it comes from the same witness or the same party's total proof. Where the party with the burden of proof was successful before the ALJ, the issue on appeal is whether substantial evidence supported the ALJ's conclusion. . . .

*French v. Rev-A-Shelf*, 641 S.W.3d 172, 177-78 (Ky. 2022) (citations omitted).

## III.     Analysis

Carlson argues two errors in the proceedings. The first error is that ALJ Coleman rendered his verdict in favor of Lane despite medical evidence from Lane's treating physician, Dr. Aaron, being stricken from the record. The second issue relates to a lack of substantial evidence to warrant ALJ Coleman's ruling.

8

Concerning the first issue, the question that must be answered is whether ALJ Coleman was entitled to consider Dr. Aaron's testimony as evidence despite ALJ Pullin's interlocutory order striking Dr. Aaron's report due to him not being deposed. For the following reasons, we believe ALJ Coleman was entitled to consider Dr. Aaron's testimony as evidence.

Carlson filed an initial motion to dismiss based on Dr. Aaron's report that the injury occurred prior to May 16, 2018, when Lane was working in a different state. As the Board noted, in response to Carlson's motion, Lane filed Dr. Budde's report on September 3, 2019. ALJ Pullin considered this enough to make out a prima-facie case for causation and impairment. Therefore, she put the claim in abeyance to allow both parties to submit further evidence. ALJ Coleman later noted, "The treatment records of Dr. Aaron were allowed to be filed but opinion evidence was stricken pending either party taking the deposition of this out of state physician." Both parties were given more time to obtain evidence, at which point Lane obtained an IME from Dr. Fadel. Carlson declined to obtain an IME by their own chosen physician, choosing instead to rely on the report of Dr. Aaron. Consequently, Carlson did eventually depose Dr. Aaron. Therefore, his opinion evidence was admissible and the interlocutory order striking his report from the record is moot. Any argument that Dr. Aaron's opinion should have been given more weight by the ALJ over Dr. Fadel's or Dr. Budde's opinions is controlled by the fact that the ALJ "has the sole discretion to . . . reject any testimony and believe or disbelieve various parts of the evidence . . ." *Id.*

9

Concerning the second issue, the question that must be asked is whether or not ALJ Coleman was presented with substantial evidence to support his conclusion that Lane was injured on May 16, 2018. For the following reasons, we believe ALJ Coleman was well within his discretion when ruling in favor of Lane.

There are clear contradictions in the evidence before us. ALJ Coleman reviewed Lane's listed symptoms in relation to the testimony of the medical examiners. ALJ Coleman concluded that the symptoms complained about by Lane were consistent with the medical findings of Dr. Fadel. Dr. Fadel determined that Lane had acromioclavicular arthritis that was exacerbated by the injury occurring on May 16, 2018. Dr. Budde also agreed with this conclusion. Therefore, even though contradictions are present, there is substantial evidence in the record to support ALJ Coleman's determination, and we defer to his finding.

## IV.    Conclusion

For the aforementioned reasons, we affirm the Court of Appeals.

All sitting. All concur.

10

COUNSEL FOR APPELLANT:

James B. Compton
Quintairos, Prieto, Wood, Boyer, P.A.

COUNSEL FOR APPELLEE,

Ched Jennings
Jennings Law Office

ADMINISTRATIVE LAW JUDGE:
Hon. John B. Coleman

WORKERS' COMPENSATION BOARD:
Michael Wayne Alvey
Chairman